UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTOPHER BROWN,
    *Plaintiff*,

v.

WARDEN FAUCHER *et al.*,
    *Defendants*.

No. 3:19-cv-00690 (JAM)

## RULING ON MOTION FOR RECONSIDERATION

Plaintiff Christopher Brown is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against certain DOC officials alleging that he was wrongly subjected to restrictive housing. Doc. #1. After conducting an initial review under 28 U.S.C. § 1915A, I dismissed the complaint but permitted Brown an opportunity to file a motion for reconsideration with a proposed amended complaint. *See Brown v. Faucher*, 2019 WL 3231205 (D. Conn. 2019).

Brown has now moved for reconsideration along with the filing of a proposed amended complaint. Doc. #13. For the reasons stated below, I will DENY the motion for reconsideration on the ground that the amended complaint does not allege facts that give rise to plausible grounds for relief.

### BACKGROUND

The following facts are alleged in the amended complaint and are accepted as true only for purposes of this ruling. Brown was confined at the Corrigan-Radgowski Correctional Center ("Corrigan") at the time of the events alleged in the amended complaint. Doc. #13 at 6 (¶ 28). His amended complaint names the following defendants: Corrigan Correctional Center Warden Faucher, District Administrator Edward Maldonado, and Lieutenants Cronin and Conjer. Doc. #13 at 3 (¶¶ 2-6).

The DOC has classified Brown as a "seriously mentally ill inmate." *Id.* at 2 (¶ 7). He has been diagnosed with post-traumatic stress disorder, borderline personality disorder, and anti-social personality disorder. *Ibid.* (¶ 8). He also suffers from suicidal ideations. *Ibid.* (¶ 9).

On August 17, 2017, at approximately 8:15 a.m., Counselor Crane, the grievance coordinator, entered Brown's housing unit to collect the grievances from the designated boxes. Doc. #13 at 6 (¶ 29). Crane found an anonymous inmate request form with the following written message: "I should just knock you out you dumb white hoe." *Id.* at 20. Crane interpreted the message as threatening and reported it to the unit manager, Lieutenant Cronin. *Ibid*.

Upon receiving the inmate request form, Cronin launched an investigation to determine who wrote the message and placed the form in the grievance box. Doc. #13 at 7 (¶ 30). After reviewing the video surveillance system, Cronin determined that another prisoner in Brown's unit, Armand Beiaj, had gone to Brown's cell, and Brown had passed him the form through the door crack. *Id.* (¶ 31); *id*. at 21. Afterward, Beiaj walked directly to the grievance box and dropped the form inside. *Id.* (¶ 35); *id*. at 21. The original inmate request and DVD with the surveillance footage were both stored as evidence in a facility safe. *Id*. (¶ 32); *id*. at 21.

As a result of the investigation, Beiaj was issued a Class A disciplinary report for accessory to commit assault on a DOC employee and placed in a restrictive housing unit ("RHU") on administrative detention status. Doc. #13 at 7 (¶ 33); *id*. at 21. Although he was not issued a disciplinary report for the threatening message, Brown was also placed in "segregation on administrative detention" pending the outcome of the investigation. *Id.* (¶¶ 33-34). Brown contends that the video surveillance footage does not show him passing anything to Beiaj. *Id.* at 8 (¶ 37). He believes that his placement in segregation was done in retaliation for the numerous lawsuits he has filed against Corrigan personnel. *Id.* (¶ 38).

Brown was placed in "punitive solitary confinement" with nothing but his socks, boxers, and T-shirt. Doc. #13 at 3 (¶ 12). The cell did not have any windows, chairs, or clocks. *Id.* at 3 (¶ 12), 8 (¶ 39). He was forced to eat all his meals in his cell and was deprived of "all property," phone calls, and contact visits. *Ibid.* Brown was subjected to 23- to 24-hour lockdown and had to be escorted with handcuffs and chains every time he left his cell. *Id.* at 3 (¶ 12). He was also excluded from participating in any religious or work-related programs. *Ibid.* He was not given any mental health treatment, and the conditions caused a detriment to his pre-existing mental health problems. *Id.* at 8 (¶ 40).

While housed in solitary confinement, Brown sought to preserve the camera footage and other evidence from the August 17 incident via inmate request form. Doc. #13 at 9 (¶ 41), 23. He also sought "proper Due Process by requesting that the proper chain of custody who[] authorized [his confinement] sign off on [his] placement." *Id.* (¶ 42). Brown later learned that Cronin did not have the authority to place him in segregation because, pursuant to DOC regulations, such a decision may only come from a shift commander, the warden, the deputy warden, or the director of offender classification. *Id.* (¶¶ 48-49); *id*. at 26.

On August 31, 2017, Brown filed a request to challenge Cronin's decision to place him in segregation. *Id.* (¶ 50); *id*. at 27. After confirming that it was Cronin who ordered the placement, Brown filed a grievance against him for placing him in segregation without a hearing or an explanation of the reasons for his placement. *Id.* at 10 (¶ 51); *id*. at 28. Brown also contended that Cronin did not have the authority to order his placement in segregation. *Id.* at 28.

On September 27, 2017, the grievance was denied on the ground that Brown's placement in segregation on administrative detention status was authorized under DOC Administrative Directive 9.4, § 3(B)(2). *Ibid.* That provision defines "Administrative Detention" as "[p]lacement

of an inmate in a [RHU] that results in segregation of the inmate . . . [f]or investigation of an allegation or information involving the inmate in the commission of a crime, or of activities jeopardizing the security of the facility or the safety of staff or inmates that could result in placement on punitive or administrative segregation or transfer to high security." *Ibid.*

Brown appealed the denial of the grievance to District Administrator Maldonado. *Id.* at 10 (¶ 52), 29. But Maldonado denied the appeal, reasoning that Brown's administrative detention status was authorized pursuant to Administrative Directive 9.4, § 3(B). *Id.* at 29.

In the meantime, on August 30, 2017, Lieutenant Conjer placed Brown on administrative detention status a second time pending a custody review "for a staff profile." Doc. #13 at 11 (¶¶ 58-59), 31. Like Cronin, Conjer does not have the authority to order administrative detention. *Id.* (¶ 59). Once again, Brown filed an inmate request challenging Conjer's decision. *Id.* at 33. Conjer responded that the order was issued to protect Brown and others and was authorized under Administrative Directive 9.4, § 9(A). *Ibid.* That provision provides:

> In order to protect the inmate or others, the Unit Administrator or designee may order an inmate's placement on restrictive housing status, Administrative Detention or Transfer Detention by completing CN 9401, [RHU] Status Order, stating the specific reasons for placement. Copies shall be distributed as designated on CN 9401, [RHU] Status Order. The Unit Administrator shall receive the original copy of the order within 24 hours or the following business day after placement. The Unit Administrator shall see that the required reviews are performed and documented on CN 9401, [RHU] Status Order.

*Id.* at 38. Brown then filed grievances challenging the second administrative detention order, which Warden Faucher denied. *Id.* at 12 (¶¶ 60-64), 40. Faucher stated that one of the grievances was duplicative of the first grievance and that custody review was an investigation which authorized administrative detention. *Id.* (¶ 63).

Brown appealed Faucher's decision to District Administrator Maldonado. Doc. #13 at 13 (¶ 65), 36, 37. Among the arguments he raised on appeal, Brown contended that he was

4

unlawfully kept in the RHU for 29 days when Administrative Directive 9.4 Attachment B authorizes administrative detention for only 14 days. *Id.* (¶ 68), 37. Maldonado denied the appeal on the ground that Brown's administrative detention was authorized under Administrative Directive 9.4. *Id.* (¶¶ 65-66), 36.

On September 12, 2017, Conjer placed Brown on administrative detention status for a third time "pending [a] staff profile." Doc. #13 at 14 (¶ 72), 39. Brown challenged the decision through the administrative remedy procedure, but officials upheld Conjer's decision. *Id.* (¶ 73), 40-41. Officials at Corrigan performed periodic reviews of Brown's administrative detention status in accordance with DOC policy. *Id.* at 15 (¶¶ 74-76). However, the periodic reviews ceased on September 5, 2017, and no reviews were conducted thereafter until he was transferred out of Corrigan on September 13, 2017. *Ibid.*

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

As an initial matter, Brown's amended compliant contains the same exhibits and attachments as his original submission. *Compare* Doc. #13 at 20 et seq. *with* Doc. #1 at 17 et seq. In his amended complaint, Brown continues to claim that his placement in segregation on administrative detention status in late 2017 violated his Eighth Amendment protection against cruel and unusual punishment and his Fourteenth Amendment right to procedural due process. As I previously discussed, Brown's initial complaint suggested he may have been attempting to state a claim for First Amendment retaliation for his previous lawsuits against Corrigan staff. *See Brown*, 2019 WL 3231205 at *3, *5. Although his amended complaint contains the same reference to retaliation, Doc. #13 at 8 (¶ 38), Brown alleges no new facts that would transform his conclusory allegation into a statement of a plausible First Amendment claim, *see Brown*, 2019 WL 3231205 at *5.

### *Eighth Amendment*

Brown again alleges that his confinement in segregation violated his right against cruel and unusual punishment, but he no longer asserts the conditions of his confinement as basis for his Eighth Amendment claim, which I previously dismissed. *See Brown*, 2019 WL 3231205, at *4. Brown now pleads an Eighth Amendment claim on the basis of deliberate indifference to his medical needs, alleging he was "held without any mental health treatment" during his confinement. Doc. #13 at 18 (¶¶ 86-87), 6 (¶¶ 26-27).

The Supreme Court has held that a prison official's deliberate indifference to a prisoner's serious medical needs amounts to a violation of the Eighth Amendment, which includes needs

for mental health care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989). The Second Circuit has directed that a prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an *objective* requirement: that the prisoner's medical need was sufficiently serious. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The prisoner must show that he suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a *subjective* requirement: that the defendant has acted recklessly in their denial of medical care, or with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or merely negligent medical malpractice. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind when denying treatment for that prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

With respect to the objective requirement, Brown's amended complaint alleges he has been classified as a seriously mentally ill inmate and diagnosed with PTSD, borderline personality disorder, and anti-social personality disorder. Doc. #13 at 2 (¶¶ 7-9). This is a combination of severe mental conditions that are sufficient to satisfy the objective prong of the Eighth Amendment standard for deliberate indifference. *See Currytto v. Furey*, 2019 WL 1921856, at *5 (D. Conn. 2019) (collecting cases).

But Brown fails to make any allegations that would satisfy the subjective requirement that defendants acted with the equivalent of a criminally reckless state of mind with respect to his

7

medical needs or that defendants actually knew of and disregarded an excessive risk that Brown would face serious harm as a result of their actions. *See Spavone*, 719 F.3d at 138; *Hilton*, 673 F.3d at 127. As in his original complaint, Brown alleges that defendants "knowingly subjected him to conditions of confinement that exacerbated his serious mental illness" in violation of his Eighth Amendment rights. Doc. #13 at 1 (¶ 1); Doc. #1 at 1 (¶ 1). Although Brown now states, "The plaintiff is on anti-[psychotic]- ([psycho] Tropic drugs) medication," he alleges no other new facts. Doc. #13 at 6 (¶ 27). Brown simply goes on to assert without further substantiation that "each defendant knew housing a mentally ill prisoner in those conditions causes more severe mental damage" and "[e]ach defendant knew by housing a mentally ill prisoner in solitary confinement was cruel and unusual punishment under those harsh conditions especially without any mental health treatment" and that plaintiff "cont[em]plated suicide multiple times." *Id*. (¶ 27), 18 (¶¶ 86-87).

These conclusory assertions do not establish that any particular defendant recklessly disregarded an excessive risk that Brown would suffer serious harm, much less that he actually suffered such serious harm. Accordingly, Brown's amended allegations are insufficient to support a plausible claim of deliberate indifference to medical needs in violation of his Eighth Amendment rights.

### *Due Process*

Brown again claims that the defendants violated his right to due process under the Fourteenth Amendment by subjecting him to administrative confinement with restrictive conditions without proper notice or a hearing. Doc. #13 at 16 (¶ 80). In *Sandin v. Conner*, 515 U.S. 472, 486 (1995), the Supreme Court concluded that a prisoner who was subject to a disciplinary term of confinement in restrictive housing for 30 days did not suffer an "atypical and

significant hardship" to constitute a deprivation of a liberty interest that would be subject to protection under the Due Process Clause. I dismissed Brown's due process claim in the initial complaint because his approximately month-long confinement in administrative segregation, and the conditions he was subjected to therein, did not amount to an "atypical and significant hardship" under *Sandin*. *See Brown*, 2019 WL 3231205 at *4. After reviewing the allegations in the amended complaint, I conclude that Brown has failed to cure this factual deficiency.

Because a prisoner's liberty interests are already restricted by incarceration, a prisoner who complains of adverse action without due process must show that the adverse action amounted to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (*per curiam*). The conditions Brown alleges he endured for roughly one month in administrative segregation do not show an "atypical and significant hardship." *See Jones v. Tompkins*, 715 F. App'x 101, 102 (2d Cir. 2018) (affirming dismissal of due process claim because prisoner "failed to allege that the conditions of the 90-day SHU sentence were more onerous than usual" (internal quotations omitted)); *Sealey v. Giltner*, 197 F.3d 578, 586-590 (2d Cir. 1999) (confinement in restrictive housing unit for 23 hours per day for 101 days without various privileges did not trigger due process protections); *Galarza v. Erfe*, 2019 WL 121784, at *5 (D. Conn. 2019) (48 days in a "nasty, dirty, rusty cell" without writing table, pen, and postage did not constitute substantially atypical conditions of confinement that would implicate a protected liberty interest under *Sandin*); *St. Louis v. McClain*, 2018 WL 6421060, at *3 (D. Conn. 2018) (33 days in segregation without personal property, mail, church services, contact visits, phone privileges, commissary privileges, and recreation did not constitute an "atypical and significant hardship"). Because Brown has failed to allege that the conditions of his confinement were more onerous

than usual, his factual allegations remain insufficient to show the existence of a liberty interest that would be subject to protection under the Due Process Clause.

In his amended complaint, Brown appears to add a new basis for his claim that he was deprived of a protected liberty interest in violation of his due process rights. Brown now asserts that certain prison regulations established a "substantive predicate" for his transfer to segregation that gave rise to "a state created interest[,] which gives the plaintiff a protected liberty interest in remaining free of the hardships and severe conditions of the (SHU)." Doc. #13 at 4 (¶ 15). In other words, Brown appears to contend that he acquired a liberty interest in remaining in the general prison population based on Corrigan's internal policies. But the Supreme Court in *Sandin* "rejected the idea that a state's establishment of a specific substantive predicate for restrictive confinement of a prisoner is sufficient to create a protected liberty interest." *Sealey*, 197 F.3d at 583 (citing *Sandin*, 515 U.S. at 483-84). As the Second Circuit has explained, even where there is allegedly a "state-created liberty interest" as a result of "state statutes or regulations [that] require, in language of an unmistakably mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates," in order for a prisoner's claim to be actionable, the deprivation of "the liberty interest must [still] subject the prisoner to atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (internal quotations omitted). Since Brown has not alleged facts to show that he was subject to an atypical and significant hardship, as explained above, his factual allegations are still insufficient to show the existence of a protected liberty interest. Accordingly, Brown has failed to allege facts that give rise to plausible grounds for relief under the Due Process Clause.

## CONCLUSION

The Court DENIES the motion for reconsideration (Doc. #13) on the ground that the proposed amended complaint does not allege facts that give rise to plausible grounds for relief.

It is so ordered.

Dated this 28th day of October 2019.

                                                                /s/*Jeffrey Alker Meyer*  
                                                                Jeffrey Alker Meyer  
                                                                United States District Judge